MOORE, Judge.
C.L.W. appeals from a judgment of the Madison Juvenile Court (“the juvenile court”) determining that D.S. is the father of J.W. (“the child”). We reverse.

Procedural History

This is the second time this case has been on appeal to this court. See C.L.W. v. Madison Cnty. Dep’t of Human Res., 148 So.3d 1083 (Ala.Civ.App.2014). In C.L.W., this court set forth the procedural history of this case as follows:
“On February 28, 2011, the Madison County Department of Human Resources (‘DHR’) filed a petition alleging that the child was. dependent. DHR alleged that the child’s mother is S.W. (‘the mother’) and that the mother had identified her husband, C.L.W., as the father of the child. On June 7, 2011, the juvenile court entered separate judgments finding the child dependent and awarding custody of the child to DHR.
“In October 2011, D.S. wrote a letter to the DHR caseworker for the child *671 stating that he is the child’s father and requesting that DNA testing be done. On March 9, 2012, A.S. filed a motion requesting, among other things, that she and D.S. be added as parties, that she be awarded custody of the child, and that the juvenile court order DNA paternity testing. A.S. alleged, among other things, that she is the biological paternal grandmother of the child and that the child had lived with her from the time he was three months old until February 23, 2011, when DHR removed him from her home. On March 16, 2012, the juvenile court denied A.S.’s request that she and D.S. be allowed to intervene as parties; it also denied her request for custody. The juvenile court, however, granted the motion for DNA paternity testing. On April 19, 2012, the results of the DNA paternity testing were filed with the juvenile court; those results indicated that there was a 99.998% probability that D.S. was the biological father of the child. On June 7, 2012, AS. filed a motion requesting that she be allowed to intervene, that D.S. be allowed to intervene, that D.S. be adjudicated as the child’s father, and that she be awarded custody of the child. On June 19, 2012, D.S. filed a motion to stay the proceedings and for appointment of counsel. He asserted that he was the biological father of the child. After a July 12, 2012, hearing, the juvenile court entered an order on July 30, 2012, stating:
“ ‘This cause came before the Juvenile Court of Madison County, Alabama, on July 12, 2012, for hearing on the issue of paternity of the ... child. It appears to the Court that there are conflicting statutory presumptions with regard to the child’s paternity. It further appears that [D.S.] is a necessary party to these proceedings; that he is entitled to representation by counsel; and that he has not been properly served process.
“ ‘It is therefore ORDERED, ADJUDGED and DECREED by the Court as follows:
“ ‘1. The evidentiary hearing in this case is continued and will be held on August 23, 2012....
“ ‘2. Counsel for [DHR] shall perfect service of process on [D.S.].
“ ‘3. Christopher Messervy, Esquire, is ' appointed to represent [D.S.].’
“On August 23, 2012, a hearing was held regarding the child’s paternity. On August 27, 2012, C.L.W. filed a motion to dismiss D.S. as a party and a brief in support of his position that his status as the child’s presumptive father precluded any paternity challenge. C.L.W. also requested that the juvenile court enter an order stating that he is the father of the child. On August 30, 2012, D.S. filed a motion requesting that an evidentiary hearing be held on whether C.L.W. is the presumed father of the child. On August 31, 2012, C.L.W. filed a motion in opposition to D.S.’s motion, asserting that a hearing had already been held on August 23, 2012.
“On September 24, 2012, the juvenile court entered an order following a review hearing that had been held on September 7, 2012. The juvenile court maintained custody of the child with DHR, noted that C.L.W. is the ‘legally presumed father’ of the child, and stated that DHR must explore relative resources after the juvenile court determines the child’s paternity.
“Following a review hearing on March 8, 2013, the juvenile court entered an order on June 25, 2013, noting that ‘[a]lso present at the hearing were the following non-parties and representa *672 tives: ... [D.S.,] the father' of [J.W.],’ and ordering, among other things, that DHR was to retain temporary custody of the child and that a review hearing would be held in September 2013. On July 5, 2013, C.L.W. filed a motion to alter, amend, or vacate the June 25, 2013, order or, in the alternative, to clarify the juvenile court’s June 25, 2013, order to the extent that it ‘list[ed]’ D.S. as the father of the child. On August 2, 2013, C.L.W. filed his notice of appeal.
[[Image here]]
“On appeal, C.L.W. challenge[d] the juvenile court’s June 25, 2013, order to the extent that it adjudicated D.S. as the father of the child.”
148 So.3d at 1084-85.
This court held, however, that the juvenile court’s “designation of D.S. as the father of the child in its [June 25, 2013,] review order was not so clear and certain as to constitute a judgment on the merits of the paternity disputed and that, therefore, t]hat controversy remained] pending before the juvenile court without a final adjudication.” 148 So.3d at 1086. Because there was no final judgment from which C.L.W. could appeal, we dismissed the appeal. 148 So.3d at 1086.
Subsequently, on May 6, 2014, the juvenile court entered a judgment adjudicating D.S. to be the child’s father. On May 20, 2014, C.L.W. filed a postjudgment motion; that motion was denied by operation of law on June 3, 2014. See Rule 1(B), Ala. R. Juv. P. On June 5, 2014, C.L.W. filed his notice of appeal.

Discussion

On appeal, C.L.W. argues that D.S. lacked standing to assert his paternity of the child because, he says, he is the presumed father of the child and he has persisted in his presumption of paternity. See Ex parte Presse, 554 So.2d 406, 418 (Ala.1989) (“[S]o long as the presumed father persists in maintaining his paternal status, [no other man has standing] to challenge the presumed father’s parental relationship.”).
At the hearing held on the issue of the child’s paternity, four exhibits were entered into evidence: (1) an “Alabama Center for Health Statistics, State of Alabama Affidavit of Paternity,” executed by the mother and C.L.W., in which they asserted that C.L.W. was the biological father of the child; (2) the child’s birth certificate dated April 9, 2009; (3) the results from the paternity test indicating that there was a 99.998 percent probability that D.S. was the biological father of the child; and (4) a marriage certificate of the mother and C.L.W. dated May 4, 2010. There was no testimony or other evidence presented; specifically, there was no evidence presented indicating that C.L.W. had not persisted in his presumption of paternity.[1]
Alabama Code 1975, § 26-17-204, provides, in pertinent part:
“(a) A man is presumed to be the father of a child if:
[[Image here]]
“(4) after the child’s birth, he and the child’s mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with the law although the attempted marriage is or could be declared invalid, and:
*673 “(A) he has acknowledged his paternity of the child in writing, such writing being filed with the appropriate court or the Alabama Office of Vital Statistics.”
The evidence admitted at the hearing indicates that C.L.W. met the requirements under § 26-17-204(a)(4) so as to be considered the child’s presumed father.[2] D.S., therefore, had the burden of presenting evidence indicating that C.L.W. had not persisted in that presumption. J.S.M. v. Cleburne Cnty. Dep’t of Human Res., 140 So.3d 484, 486-87 (Ala.Civ.App.2013). Because D.S. failed to present any evidence on this point, we conclude that the juvenile court could not have properly determined that D.S. had met his burden of demonstrating that C.L.W. had not persisted in his presumption of paternity, and, thus, D.S. lacked standing to challenge C.L.W.’s paternity. Id.; see also B.C. v. J.S.U., 158 So.3d 464, 469 (Ala.Civ.App.2014).

Conclusion

Based on the foregoing, we conclude that the juvenile court lacked jurisdiction to declare D.S. the father of the child. We, therefore, reverse the judgment of the juvenile court and remand the cause for the entry of a judgment consistent with this opinion. See B.C., supra.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. We note that D.S.’s attorney did attempt to call the child's foster parent to testify regarding the lack of a relationship between the child and C.L.W.; however, the juvenile court sustained an objection to that testimony. D.S. did not file a conditional cross-appeal as to that issue.

. Because C.L.W. did not present any argument regarding the effect of Ala.Code 1975, § 26-17-305, on this matter, we do not discuss that Code section in this opinion.